UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-81924-CIV-MARRA

STEVEN R. GRANT,

Plaintiff,

vs.

MORGAN STANLEY SMITH BARNEY LLC,

Defendant.

_____/

**OPINION AND ORDER**

     This cause is before the Court upon Defendant Morgan Stanley Smith Barney LLC's

Motion to Compel Arbitration and to Stay (DE 5).  The Motion is fully briefed and ripe for

review.  The Court held a hearing on the Motion on February 24, 2017.  The Court has carefully

considered the Motion and is otherwise fully advised in the premises.

     I. Background

     Plaintiff Steven R. Grant ("Plaintiff") brings a five count Amended Complaint against

Defendant Morgan Stanley Smith Barney LLC ("Defendant") for a violation of the Florida Civil

Rights Act, Florida Statutes § 760.10 (count one), a violation of the Florida's Private

Whistleblower Act, Florida Statutes § 448.103 (count two), civil conspiracy (count three),

tortious interference with a business relationship (count four) and unjust enrichment (count five).

(Am. Compl., DE 1-5.)  Plaintiff, an employee of Defendant, alleges Defendant subjected him to

age discrimination and retaliated against him when he complained about the alleged

discrimination.  (Am. Compl. ¶ 1.)

     The exhibits attached to the instant motion and the February 24, 2017 hearing established

the following: More than ten years ago, Defendant launched an internal employee dispute resolution program entitled CARE (Convenient Access to Resolutions for Employees).  The pre-2015 version of CARE included both a mandatory arbitration program for some claims, and a voluntary arbitration program for other claims.  Employment discrimination claims could be pursued in an arbitration forum or in court.

In 2015, Defendant expanded the CARE program to make arbitration mandatory for all covered claims.  The arbitration agreement covers "any and all disputes between [Plaintiff] and [Defendant] . . . arising out of, or which arose out of [ ] employment."  This includes claims for "statutory discrimination, harassment and retaliation claims, and claims under, based on or relating to any federal, state or local . . . statute. . . and any other . . . discrimination law." (Arbitration Agreement ¶ 2, DE 5-6.)  The agreement also provides that employment discrimination claims, including claims for harassment and retaliation, would be resolved by final and binding arbitration conducted under the auspices and rules of JAMS in accordance with the JAMS arbitration rules. (Id. at ¶ 5(a)(i).)

Defendant delivered this notice to employees via their work email accounts which contained links to the arbitration agreement, the CARE guidebook that described the expanded arbitration program, and the CARE arbitration program opt-out form.  This information was also posted on Defendant's intranet site where all human resources policies are available to employees.  The email explained that, effective October 2, 2015, arbitration would mandatory for all employees.  The email also explained that continuing employment with Defendant after October 2, 2015 would constitute acceptance of the arbitration agreement unless the employee opted out by following the instructions contained in the notice for completing the opt-out form.

2

The subject of the email was "expansion of the CARE arbitration program."

The email notice was delivered to and received by Plaintiff on September 2, 2015, via his work email account.  The email did not trigger an automatic out-of-office message and Plaintiff was not on leave at any time between September 2, 2015 and October 2, 2015.  Plaintiff did not complete and submit the opt-out form.

Plaintiff testified that many emails are sent to his work email and he does not open and read all of them.  Emails that are not opened remain in bold face with black lettering.  When seeing the word "CARE" in the email, Plaintiff believed the email concerned a charity, as Defendant participates in various philanthropic activities.  Plaintiff did not open the September 2, 2015 email. [1]  On September 22, 2015, Anthony Polimeni, the branch manager where Plaintiff works, forwarded an email to 45 employees, including Plaintiff, which informed employees that the deadline to opt-out of arbitration was approaching.[2]  Plaintiff testified that, while he opened that email, he did not read that email.[3]  It had the appearance of a broadcast or promotional email for a charity.  Had he read that email, he would have given it to an attorney to explain it to him, which he did not do.

Defendant moves to compel arbitration on the basis that (1) federal law requires enforcement of the arbitration agreement; (2) the arbitration agreement is valid and enforceable

---

[1]  Once the instant motion got filed, Plaintiff checked his email and saw that he had not opened this email.

[2]  The subject of this email was "FW: Expansion of CARE Arbitration Program - Reminder."

[3]  Plaintiff later testified that he is not sure if ever opened the second email and the second email may have also been in bold face, meaning that it was never opened.

as a matter of law: (3) Plaintiff's claims fall within the scope of the arbitration agreement and (4)

Plaintiff's claims should be directed to JAMS arbitration.

Plaintiff responds that the arbitration agreement did not fairly and adequately inform him

about the agreement and that "negative opt-out" emails are unconscionable.

II.  Discussion

The Supreme Court has articulated a strong federal policy favoring arbitration

agreements. See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983).

One of the purposes of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 et seq., is to "ensure

judicial enforcement of privately made agreements to arbitrate." Dean Witter Reynolds, Inc. v.

Byrd, 470 U.S. 213, 219 (1985). As such, arbitration agreements must be "rigorously enforce[d]"

by the courts. Id. at 221.  Because arbitration is a matter of contract, however, the FAA's strong

pro-arbitration policy only applies to disputes that the parties have agreed to arbitrate.

Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 57 (1995). "[A] party plainly

cannot be bound by an arbitration clause to which it does not consent."  BG Grp., PLC v.

Republic of Argentina, — U.S. —, 134 S. Ct. 1198, 1213 (2014) (Sotomayor, J. concurring).

For the purpose of a motion to compel arbitration, the Court may consider affidavits.  See

Samadi v. MBNA America Bank, N.A., 178 Fed. App'x 863, 866 (11th Cir. 2006). In fact, the

party opposing a motion to compel arbitration has an affirmative duty of coming forward with

affidavits or deposition transcripts to show that the court should not compel arbitration.  See

Sims v. Clarendon Ins. Co., 336 F. Supp. 2d 1311, 1314 (S.D. Fla. 2004).  Federal substantive

law of arbitrability determines which disputes are within the scope of the arbitration clause.

Lawson v. Life of the South Ins. Co., 648 F.3d 1166, 1170 (11th Cir. 2011). Whether an

arbitration agreement was formed is governed by state contract law.  Caley v.  Gulfstream
Aerospace Corp., 428 F.3d 1359, 1368 (11th Cir. 2005).

      The question before the Court is whether Plaintiff's claims are subject to arbitration even
though he never reviewed the opt-out emails sent by Defendant.  To begin, the Court notes that
"an arbitration agreement does not need to be signed to satisfy the written agreement
requirement of the FAA."  Santos v. General Dynamics Aviation Svcs. Corp., 984 So. 2d 658,
660 (Fla. Dist. Ct. App. 2008); see Caley, 428 F.3d at 1369 (no signature is needed to satisfy the
FAA's written agreement requirement).  Furthermore, Florida law permits the offeror to specify
the terms and manner of acceptance.  Dorward v. Macy's Inc., 2:10–cv–669–FtM–29DNF, 2011
WL 2893118,
at * 9 (M.D. Fla. July 20, 2011) (citing Kendel v. Pontious, 261 So.2d 167, 170 (Fla. 1972);
Holloway v. Gutman, 707 So. 2d 356, 357 (Fla. Dist. Ct. App. 1998)).  Acceptance of an
arbitration agreement may be done by performance, which includes continued employment.
Santos, 984 So. 2d at 661; BDO Seidman, LLP v.  Bee, 970 So. 2d 869, 875 (Fla. Dist. Ct. App.
2007).  Moreover, " a party may manifest assent to an agreement to arbitrate by failing to opt out
of the agreement within a specified time."  Doward, 2011 WL 2893118, at * 10.

      Corbin v. Affiliated Computer Svcs, Inc., No. 6:13–cv–180–Orl–36TBS, 2013 WL
3804862 (M.D. Fla. July 19, 2013) addressed a similar circumstance to the instant case.  The
plaintiff received an email at his work email address bearing the subject line "DRP[4]
(MANDATORY ARBITRATION PLAN) WILL APPLY TO YOU."  Id. at * 3.  The email
stated that continuing employment 30 days after receipt of the email would constitute acceptance

---

    [4] DRP stood for "dispute resolution program" Id. at * 1.

of the arbitration agreement. Id. at * 5.  The plaintiff stated that he did not recall receiving or

reviewing the email.  Id. at * 6.  The court found that this fell short of an "unequivocal denial

that he received and opened the email."  Id.  Furthermore, the court stated "[w]hen a defendant

has produced evidence showing it sent an item properly mailed, or in this case emailed, there

arises a rebuttable presumption that it was received by the addressee." Id. (citing Barnett v.

Okeechobee Hosp., 283 F.3d 1232, 1239 (11th Cir. 2002); Abdullah v. American Express Co.,

No. 3:12–cv–1037, 2012 WL 6867675, *5 (M.D. Fla. Dec. 19, 2012) ("While this case deals

with electronic email rather than mail sent through the U.S. Postal System, the undersigned sees

no reason why the same presumption of delivery would not be applicable.")).  Based on the

finding that the plaintiff received the email, the court found there was an agreement to arbitrate.

Here, Plaintiff acknowledges that he saw the two emails relating to the mandatory

arbitration agreement, but failed to open and read them.  The Court finds that Plaintiff's decision

not to open and read an email does not render the arbitration agreement invalid and

unenforceable. See Morris v. Milgard Mfg. Inc., No. 12–cv–01623–REB–CBS, 2012 WL

6217387, at * 3 (D. Colo. Dec. 13, 2012) (the "plaintiff's purported ignorance of the policy,

whether willful or otherwise, does not absolve him from being bound by the agreement"); see

also Smith v. Comcast Cable Communications Management, LLC, No. 15-

62672-CIV-MORENO, 2016 WL 4480975, at * (S.D. Fla. Aug. 22, 2016) (rejecting the

plaintiff's claim that he never saw the brochure mailed to his home).  Instead, by continuing

employment and failing to opt-out, Plaintiff assented to the terms of the arbitration agreement.

See Doward, 2011 WL 2893118, at * 10 (employee assented to arbitration agreement by

continuing employment and failing to opt-out of the optional program when the plaintiff did not

mail in the election form received during her hiring within the allotted 30 days).

Plaintiff, however, argues that because the opt-out email was deceptively sent and was never read by him, it cannot form the basis to compel arbitration. Specifically, Plaintiff states that the email had the "innocuous appearance of a non-important human resources correspondence." (Resp. at 2.) The Court disagrees. The subject line of the email stated "expansion of the CARE arbitration program." Although Plaintiff testified that he believed the use of the word "CARE" reflected a firm-wide promotion email, the Court finds this belief was unreasonable, given that the subject line of the emails also included the words "arbitration program." Nor does the Court find anything unreasonable about the manner in which the terms of the agreement were communicated. Indeed, the agreement was accessible both via links in the email as well as Defendant's intranet.

Next, the Court rejects Plaintiff's contention that the arbitration agreement is unconscionable and void because it requires him to arbitrate his claims before JAMS and requires him to arbitrate statutory claims. Arbitration forum selection clauses specifying a tribunal are valid and enforceable. Scherk v. Alberto-Culver Co., 417 U.S. 506, 519 (1974). Furthermore, "by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." Mitsubishi Motors Corp. v. Soler Chyrsler-Plymouth, Inc., 473 U.S. 614, 628 (1985). Hence, the broad language in the arbitration agreement encompasses the claims brought by Plaintiff, and JAMS is the proper forum given the claims brought.

III. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendant Morgan

Stanley Smith Barney LLC's Motion to Compel Arbitration and to Stay (DE 5) is **GRANTED**.

The parties are ordered to arbitrate this dispute. The case is **STAYED** pending completion of

arbitration proceedings.  The Clerk shall **ADMINISTRATIVELY CLOSE** this case and all

pending motions are **DENIED AS MOOT**.  Either party may move to re-open the case after the

arbitration is completed if further judicial relief is required.

   **DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County,

Florida, this 19th day of March, 2017.

_____
KENNETH A. MARRA
United States District Judge